UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERALD NAQUIN                                CIVIL ACTION

VERSUS                                       NO: 07-8782

LIN-BAR MARINE, INC., ET AL.                 SECTION: "A" (5)

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 48)** filed by defendants Bois d'Arc Energy, Inc. and Elevating Boats, Inc. Third-party defendant Eagle Consulting, LLC opposes the motion. The motion, set for hearing on February 18, 2009, is before the Court on the briefs without oral argument.[1] For the reasons that follow the motion is GRANTED.

I.  **BACKGROUND**

This indemnity dispute arises out of personal injuries allegedly sustained by offshore worker Gerald Naquin. On September 17, 2007, Naquin, who was employed by Eagle Consulting, LLC ("Eagle"), was working in the oilfield known as Ship Shoal Block 113 located on the Outer Continental Shelf ("OCS"). Defendant Bois d'Arc owns numerous platforms and wells situated

---

[1] Movers have requested oral argument but the Court is not persuaded that oral argument would be helpful given the issues presented.

on Ship Shoal 113.  Bois d'Arc contracted with Eagle for various equipment and personnel for use in its offshore oil and gas drilling operations.

Naquin had taken the crew boat SARENA B from the LBJ platform to the No. 8 well where work was to be performed.  From the SARENA B Naquin boarded the lift boat DONALD MOLL which lifted him adjacent to the well so that he could perform his work.  A personnel basket was used to return Naquin from the DONALD MOLL to the SARENA B for the return trip.  Naquin disembarked the personnel basket after it landed on the SARENA B's deck and stepped into an open manhole on the deck of the vessel.  Naquin sustained serious personal injuries and has undergone at least two surgeries.

Naquin was performing services for Bois d'Arc pursuant to a Master Service Agreement ("MSA") executed by Bois d'Arc and Eagle, Naquin's employer.  (Rec. Doc. 48 Exh. B).  Defendant Elevating Boats, Inc. ("EBI") owned the lift boat DONALD MOLL. Bois d'Arc had chartered the DONALD MOLL from EBI pursuant to a Blanket Charter Agreement.  (Rec. Doc. 48 Exh. A).  Defendant Lin-Bar Marine, Inc. owned the SARENA B.

Naquin filed this suit against Bois d'Arc, EBI, Lin-Bar

Marine, Eagle,[2] and others seeking recovery for the injuries that he sustained when he stepped into the open manhole.  Bois d'Arc agreed to contractually defend and indemnify EBI with respect to all of Naquin's claims.  (Def. Uncontest. Facts ¶ III).

Bois d'Arc and EBI filed a third-party demand against Eagle seeking indemnity for Naquin's claim pursuant to the indemnity provision contained in the Bois d'Arc/Eagle MSA.  (Rec. Doc. 38).  The indemnity agreement requires Eagle to defend and indemnify Bois d'Arc and its indemnities for any claim brought against them by an Eagle employee like Naquin.

Bois d'Arc and EBI now move for summary judgment on Eagle's indemnity obligation.  The question before the Court is whether Eagle owes Bois d'Arc and EBI contractual defense and indemnity pursuant to the Bois d'Arc/Eagle MSA.

## II.  DISCUSSION

### A.  *The Parties' Arguments*

Movers argue that Section 9 of the Bois d'Arc/Eagle MSA requires Eagle to defend and indemnify them for Naquin's claims.  Movers argue that under clear federal and state jurisprudence the MSA is a maritime contract which makes the indemnity obligation

---

[2] Naquin voluntarily dismissed his claims against Eagle after concluding that the claims were not legally well-founded. (Rec. Docs. 32 & 33).

enforceable.

In opposition, Eagle argues that the indemnity claim should be denied because the Louisiana Oilfield Anti-Indemnity Act renders the pertinent indemnity provision null and unenforceable. Eagle contends the contract is clearly non-maritime in nature because the oil exploration/production work being performed was on a platform attached to the OCS as opposed to a vessel. Eagle argues that because the contract is non-maritime, Louisiana law must apply given that the indemnity claim is before the Court pursuant to its supplemental jurisdiction. Eagle contends that the determination of whether the MSA is maritime or non-maritime "requires one to divorce the facts surrounding the underlying accident from an analysis of the Bois/Eagle MSA." (Rec. Doc. 74 at 7). Eagles argues that <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14 (2004), provides the appropriate analysis for this case.

   ***B.   Law and Analysis***

The Louisiana Oilfield Anti-Indemnity Act ("LOAIA") provides in relevant part as follows:

> Any provision contained in, collateral to, or affecting an agreement ***pertaining to a well for oil, gas, or water, or drilling for minerals*** which occur in a solid, liquid, gaseous, or other state, ***is void and unenforceable*** to the extent that it purports to or does ***provide for defense or indemnity, or either, to the indemnitee against loss or***

4

> ***liability for damages arising out of or resulting from death or bodily injury to persons***, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. Rev. Stat. Ann. § 9:2780(B) (2005). The Act arose out of a concern about the unequal bargaining power of oil companies and contractors. Fontenot v. Chevron U.S.A., Inc., 676 So. 2d 557, 563 (La. 1996). The Act was an attempt to avoid adhesionary contracts under which smaller contractors would have no choice but to agree to indemnify the larger oil company lest they risk losing the contract. Id. In contrast, contractual indemnity agreements such as those found in the MSA are generally enforceable under maritime law. Hardy v. Gulf Oil Corp., 949 F.2d 826, 834 (5th Cir. 1992) (citing Amer. Stevedores v. Porello, 330 U.S. 446 (1947)).

The Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, et seq., provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States. Demette v. Falcon Drilling Co., 280 F.3d 492, 495 (5th Cir. 2002). Pursuant to the OCSLA, the law to be applied to the OCS is exclusively the federal law of the United States. Rodrigue v. Aetna Cas. & Surety Co., 395 U.S.

352, 356-57, 89 S. Ct. 1835, 1837, 23 L. Ed. 2d 360 (1969). However, because federal law might be inadequate to cope with the full range of potential legal problems arising on the OCS, the Act supplements "gaps" in federal law through the incorporation of the laws of the adjacent state. <u>See id.</u>  Under incorporation, the law of the adjacent state is treated as "the law of the United States" but only to the extent that it is "applicable" and "not inconsistent with . . . other Federal laws."  <u>Id.</u> (quoting 43 U.S.C. § 1333).  Moreover, the OCSLA is a Congressionally mandated choice of law provision which preempts any contrary choice of law provision found either in state law or in the contract at issue. <u>Union Tex. Petr. Corp. v. PLT Eng'r, Inc.</u>, 865 F.2d 1043, 1050 (5th Cir. 1990) (citing <u>Matte v. Zapata Offshore Co.</u>, 784 F.2d 628 (5th Cir. 1986); <u>Wooton v. Pumpkin Air, Inc.</u>, 869 F.2d 848 (5th Cir. 1989)).

The OCSLA does not, however, apply federal law (and state law by incorporation) to every dispute arising on the OCS. Rather, the OCSLA applies only to the "subsoil and seabed" of the OCS and to structures "permanently or temporarily attached to the seabed" for the purpose of exploring for or producing natural resources.  43 U.S.C. § 1333(a)(1).  The Supreme Court and the Fifth Circuit have held that § 1333(a)(1) creates a "situs" requirement for the application of the OCSLA, including §

1333(a)(2)(A) which incorporates the state law of the adjacent state.  <u>Demette</u>, 280 F.3d at 496 (citing <u>Offshore Logistics, Inc. v. Tallentire</u>, 477 U.S. 207 (1986); <u>Mills v. Director, OWCP</u>, 877 F.2d 356 (5th Cir. 1989(en banc)).  Construing §§ 1333(a)(1) and (2)(A) together the Fifth Circuit has articulated a three-part test for determining whether state law governs a controversy arising on the OCS: 1) the controversy must arise on a situs covered by the OCSLA, 2) federal maritime law must not apply of its own force, and 3) the state law must not be inconsistent with federal law.  <u>Demette</u>, 280 F.3d at 497 (citing <u>Union Tex. Petr. Corp. v. PLT Eng'r</u>, 865 F.2d 1043 (5th Cir. 1990)).

Applying the foregoing three step <u>PLT</u> test used in this circuit, the threshold determination that must be made when determining whether OSCLA deems *adjacent* state law to govern a controversy arising on the OCS is whether the OCSLA applies at all because the OCSLA does not reach controversies that do not arise on an OCSLA situs.[3]  <u>See, e.g.</u>, <u>Offshore Logistics, Inc. v.</u>

---

[3] The Court stresses the modifier "adjacent" in this sentence because Eagle seems to assume that if the contract is deemed to be non-maritime in nature, and thereby governed by state law, that the specific state law to be applied is that of Louisiana.  Neither party noted that the MSA as amended contains a choice of law provision calling for the application of Texas and/or maritime law to govern the MSA.  (Rec. Doc. 48 Exh. B, amendment ¶ 12).  Thus, even if the MSA is non-maritime and therefore to be governed by state law, the OCSLA is the <u>sole</u> basis by which Louisiana law would be applied to this dispute in

7

Tallentire, 477 U.S. 207 (1986); Demette v. Falcon Drilling Co., 280 F.3d 492 (5th Cir. 2002). The current "dispute" before the Court is one of indemnity and in the context of an indemnity dispute the situs determination turns on the physical location of the underlying accident. Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 543 F.3d 256, 263 (5th Cir. 2008); Demette v. Falcon Drilling Co., 280 F.3d 492 (5th Cir. 2002); Hodgen v. Forrest Oil Corp., 87 F.3d 1512 (5th Cir. 1996); Hollier v. Union Tex. Petr. Corp. v. Certain Underwriters at Lloyds London, 972 F.2d 662 (5th Cir. 1992); Falcon Operators, Inc. v. P.M.P. Wireline Services, Inc., No. 97-825, 1997 WL 610825 (E.D. La. Sept. 30, 1997) (Clement, J.).[4] In other words, the OCSLA situs

---

place of Texas law as specifically agreed to in the contract. The indemnity obligation would most likely be enforceable under Texas law so it is crucial to Eagle's defense not that state law apply but that *Louisiana* state law apply. It bears repeating that the sole basis to apply Louisiana law to this dispute is via the OCSLA's congressionally-mandated choice of law provision.
    Neither party alluded to the geographic location of the Ship Shoal Block 113 field but the Court assumes that it is located off the coast of Louisiana such that Louisiana would be the "adjacent" state. OCSLA does not reference Louisiana laws specifically but rather makes reference to "the civil and criminal laws of each adjacent State." 43 U.S.C. § 1333(a)(2)(A).

    [4] This Court has previously held that in indemnity disputes the OCSLA situs determination turns on whether the underlying injury occurred on an OCSLA situs. Fuselier v. Sea Boat Rentals, Inc., No. 06-4488, 2007 WL 2713278 (E.D. La. Sept. 14, 2007) (Zainey, J.). In Grand Isle Shipyards, the Fifth Circuit discussed Fuselier with approval. 543 F.3d at 263.

8

requirement is not automatically satisfied simply because the contract containing the indemnity obligation is for services to be rendered at an OCSLA situs. Grand Isle Shipyard, 543 F.3d 261 (distinguishing Union Tex. Petr. Corp. v. PLT Eng'r, Inc., 895 F.2d 1043 (5th Cir. 1990)). Rather, the Court's focus must be on the situs of Naquin's injury. Contrary to Eagle's assertion, the Court cannot "divorce the facts surrounding the underlying accident" from its analysis of the indemnity issue.

On the morning of his accident Naquin had been sent out to the No. 8[5] well to ready it for production. Assuming that the No. 8 well is a fixed platform then it qualifies as an OCSLA situs. However, Naquin was not injured on the No. 8 well. Naquin testified that the DONALD MOLL lift boat was adjacent to the well and that a catwalk connected the DONALD MOLL to the platform. (Rec. Doc. 74 Exh. 1 at 50). Naquin had safely left the No. 8 well and transferred to the DONALD MOLL where he boarded a personnel basket. Significantly, the No. 8 well had no crane of its own so the personnel basket was controlled by a crane aboard the DONALD MOLL. (Id. at 49). The personnel basket landed on the deck of the SARENA B and Naquin sustained his injuries after departing the personnel basket when he began to

---

[5] In his deposition Naquin refers to the No. 8 well as the 5541 or "the satellite." (Rec. Doc. 74 Exh. 1).

9

cross the deck of the SARENA B and stepped in a hole.  (Id. at 60).  Thus, Naquin was injured while aboard the SARENA B, which is clearly a vessel.  Vessels are excluded from OCSLA's reach and do not qualify as OCSLA situses.  Demette, 280 F.3d at 497.

The fact that Naquin was injured while aboard a vessel does not, however, preclude the possibility that the situs requirement is met.  In this circuit an accident involving a plaintiff on a vessel who was nevertheless in "physical contact" with a platform may be deemed to have occurred on an OCSLA situs.  Grande Isle Shipyard, 543 F.3d at 262.  Hollier and Hodgen, supra, are cases in which the plaintiff was injured or killed while transferring between a fixed platform and a vessel and in both cases the OCSLA situs requirement was met because the plaintiff was in contact with both the vessel *and the platform*.  Likewise, in Falcon Operators, Inc., supra, the plaintiff was injured while crossing the catwalk that directly connected the vessel to the platform so he was found to be in physical contact with the platform when injured.  Moreover, the cases are legion in this circuit in which the situs requirement has been met when the plaintiff is injured in a personnel basket transfer between the platform and a vessel. See, e.g., Champagne v. Tetra Applied Technologies, Inc., No. G-05-299, 2006 WL 287985 (S.D. Tex. Feb. 6, 2006).  However, common and essential to all of the foregoing cases is that the injured

plaintiff retained some "physical contact" with the platform, either via a catwalk that connected the vessel to the platform or via a personnel basket that was being manipulated by a crane aboard the platform.[6]

Cases like <u>Dennis</u>, <u>supra</u> note 6, and <u>Hollier</u> <u>supra</u>,[7] demonstrate that the "physical contact" requirement is not literal or carried to "extreme or absurd lengths." <u>Grand Isle Shipyards</u>, 543 F.3d at 263. However, under the facts of this case it is clear that Naquin was injured aboard a vessel absent any physical contact with the platform at the time of his injury. Naquin was not injured while crossing the catwalk that connected the DONALD MOLL to the platform. The No. 8 well had no crane of

---

[6] <u>Dennis v. Bud's Boat Rental, Inc.</u>, is a case that exemplifies how the "physical contact" requirement can be satisfied when the plaintiff sustains his injuries aboard a vessel located near the platform. 987 F. Supp. 948 (E.D. La. 1997) (McNamara, J.). In <u>Dennis</u> the plaintiff was injured during a basket transfer between two vessels that were located adjacent to the platform. Even though the plaintiff was injured prior to ever setting foot on the platform, the platform's crane was being used to manipulate the personnel basket to move the plaintiff from one vessel to the other. The "physical contact" requirement in that case, and therefore the OCSLA situs requirement, was met because the platform's crane was used in the transfer. Thus, via the personnel basket and crane the plaintiff was considered to have been in physical contact with the platform at the time of his injury.

[7] In <u>Hollier</u>, the plaintiff was killed while crossing from the platform to a crew boat moored next to the platform. He slipped between the boat and the platform, was crushed, and then drowned. 972 F.2d at 663.

11

its own so its equipment was not used in the basket transfer. Naquin sustained his injuries when he stepped into a hole on the deck of the SARENA B, a vessel twice removed from the platform, so he was not even injured during the transfer process itself. Because Naquin was injured aboard a vessel and had no physical contact with the platform at the time of his injury, he was not injured on an OCSLA situs. Thus, the OCSLA is not triggered so as to displace the bargained-for choice of law section of the MSA and subject this indemnity dispute to Louisiana law.

Because the situs requirement is not met, thereby precluding application of the OSCLA to this indemnity dispute, the Court need not determine whether the contract is maritime or non-maritime. Although the parties limited their analysis to the nature of the contract, the Fifth Circuit has specifically rejected such an approach and has reaffirmed that the three-part PLT test provides the appropriate analysis for determining whether adjacent state law provides the rule of decision in an OCSLA case. Hodgen, 87 F.3d at 1526. The Court does not decide today whether maritime law or Texas law applies to the MSA and indeed it need not do so. For the purposes of the motion before the Court today it is enough to conclude that Louisiana law does not apply to relieve Eagle of its indemnification obligation.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 48)** filed by defendants Bois d'Arc Energy, Inc. and Elevating Boats, Inc. is **GRANTED**.

March 9, 2009

```
                              _____
                                    JAY C. ZAINEY
                              UNITED STATES DISTRICT JUDGE
```